UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

L.F. FINGERHUT, an infant,
by Emily Fingerhut, her mother, and

EMILY FINGERHUT, Individually,

                               Plaintiffs,

            -vs-                                    07-CV-502-JTC

CHAUTAUQUA INSTITUTE
CORPORATION,  INC.,  and

THE CHAUTAUQUA BIRD, TREE AND
GARDEN CLUB, INC.,

                               Defendants.
_____

On October 31, 2013, this court issued a decision and order granting plaintiffs'

motion pursuant to Rule 37(a) of the Federal Rules of Civil Procedure to the extent it

sought the production of photographs of the fallen tree that is the subject of this lawsuit,

taken soon after the occurrence by Slone-Melhuish Insurance, agent for defendant

Chautauqua Institution's liability insurance carrier Firemen's Fund Insurance ("FFI"), as to

which defendant had asserted protection from disclosure under the work product doctrine.

*Fingerhut ex rel. Fingerhut v. Chautauqua Institute Corp., Inc.*, 2013 WL 5923269

(W.D.N.Y. Oct. 31, 2013) (Item 70).   The court found that the information on file was

insufficient to allow for the fact-specific inquiry necessary to determine whether the

withheld photographs were generated as part of the insurer's ordinary practice of

investigating an occurrence, or in preparation for defending this lawsuit, and directed

defense counsel to produce those photographs to plaintiffs' counsel for use as evidence

in the case.  *Id.*, 2013 WL 5923269 at *3-4.  The court denied plaintiffs' motion to the extent it sought to compel the production of other factual information obtained by the insurer during the course of its investigation, and written information about prior incidents of property damage caused by trees falling on the premises, based on defense counsel's sworn affirmation that, "to be perfectly clear: no such other materials exits."  *Id.* at *4. Finally, the court granted plaintiffs' request for an adjustment of the case management order—which was entered by the court on June 13, 2013 to establish a workable schedule for completion of discovery and motion practice—in order to accommodate the depositions of two additional non-party witnesses who were subpoenaed by plaintiffs subsequent to the entry of that order.  *Id.* at *4-5.  The court directed the parties to renew their efforts to reschedule the remaining depositions, and further, "to submit the results of these renewed efforts to the court in the form of a joint proposal for amendment of the June 13, 2013 case management order, *to establish a final schedule for completion of all remaining discovery in the case.*"  *Id.* at *5 (emphasis added).

On December 30, 2013, defense counsel wrote to the court to report that efforts to agree upon a joint proposed scheduling order had failed, and that plaintiffs now sought several additional depositions beyond those of the two non-party witnesses which were addressed in the court's October 31, 2013 ruling.  Item 75.  Defense counsel stated his objection to this additional discovery, and submitted his proposed schedule for completion of all discovery for the court's consideration.  *Id.*

Plaintiff's counsel responded by letter dated January 7, 2014 (Item 76), stating that since the recently produced photographs depict only the tree stump and not the larger

-2-

portion of the tree that fell on the plaintiff, it has become necessary to depose several additional fact witnesses, including the person who took those photographs for the insurance agent; the Chautauqua Institution employee (identified as Chris Majewski) who cut up and disposed of the tree; and certain additional non-party witnesses who were at the scene of the accident (including the lifeguards on duty at Heinz Beach where the tree fell, and the emergency medical personnel who responded to the scene).   Item 76. Plaintiffs' counsel has submitted an alternative proposed schedule to accommodate this additional discovery, and also seeks clarification of the court's October 31, 2013 ruling with respect to defendant's obligation to produce all factual investigative information previously withheld as privileged.  *Id.*

Then, on January 16, 2014, plaintiffs' counsel issued a subpoena to Slone-Melhuish (*see* Item 78-2) seeking production of the factual information obtained as a result of the insurance agent's investigation of the occurrence—the same information sought by the prior motion to compel that was denied by the court on the basis of defense counsel's affirmation that no such information exists.  Defendant then filed successive motions pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for (1) a protective order to quash the subpoena to Slone-Melhuish on the grounds that it seeks confidential material prepared in anticipation of, and during, this litigation (Item 78); and (2) a protective order limiting further noticing of depositions, and limiting the scope of questioning at any remaining depositions to matters relevant to the issues in the lawsuit—namely, whether defendant received actual or constructive notice of any exterior signs of decay or rotting of the tree before it fell.  Item 80.

Plaintiffs responded by filing a cross-motion (Item 86) seeking to compel the depositions of (1) defendant's employee Chris Majewski, and (2) the unidentified person who took the ten photographs produced in compliance with the court's October 31, 2013 decision and order.  Plaintiffs also, and once again, seek to compel production of "all photographs of the tree and accident scene" and "all statements of any person who is a witness to the accident or was at the accident scene…."   Item 86-1, p.2.  Finally, plaintiffs request sanctions pursuant to Fed. R. Civ. P. 30(d)(2) based on defense counsel's conduct during depositions, and an order pursuant to Fed. R. Civ. P. 30(a)(2)(A)(i) permitting additional depositions.

## 1.    Clarification of 10/31/2013 Order

To address as an initial matter plaintiffs' request for clarification of the court's October 31, 2013 ruling on the prior motion to compel, suffice it to say that the order speaks for itself.  The court's denial of access to "other factual information" obtained by defendant and its insurer as the result of the investigation of the incident was based entirely on defense counsel's sworn affirmation that, "[t]o be perfectly clear: no such other materials exist." *Fingerhut*, 2013 WL 5923269, at *4.  It should go without saying that the court is powerless to order a party to produce information that counsel for a party has clearly affirmed does not exist.  The court also issued a reminder to defendant regarding the ongoing duty imposed by the discovery rules to supplement its disclosure should it learn that such "other factual information" does, in fact, exist. *Id.*  Contrary to the suggestion in plaintiffs' counsel's January 7, 2014 letter, the court did <u>not</u> rule (or intend

to rule) that "defendant is not permitted to withhold any investigative information as privileged." Item 76, p. 2.

## 2.    Defendant's Motion to Quash Subpoena

With regard to plaintiffs' attempt to obtain the "other factual information" in the insurance file directly by serving a subpoena upon Slone-Melhuish, the court once again relies on defense counsel's sworn affirmation that "the insurance file contains no evidence of any kind other than the … photographs which have been produced." Item 78-1, ¶ 10. Counsel describes the contents of the file as follows:

> [N]otes of communications between Slone-Melhuish and FFI [Firemen's Fund Insurance] within days of the incident about the investigation; information about FFI indemnity reserves for the anticipated lawsuit; correspondence reflecting FFI's thought processes about the suit; and other mat[t]ers which are utterly irrelevant to actual evidence but which reveal the defendant's own defense approaches and thought processes.
> …
> Other than the photographs which were already produced, there is nothing in the nature of evidence in the file: it is all communication with FFI and defense counsel about the case. These thoughts and impressions are not discoverable and should be protected ….

Item 78-1, ¶¶ 7, 9.

According to defense counsel, this information is protected from disclosure as reflecting confidential communications between insurance claims professionals handling the case regarding their impressions of the evidence, the severity of the injuries, and other matters prepared in anticipation of this very lawsuit. Counsel maintains that there are no photographs (other than those already produced), witness information, recorded statements, or any other factual discoverable evidence in the file, and that plaintiffs' use of the subpoena power to obtain privileged information directly from defendant's insurance

agent underscores the need to rein in "the extraordinarily improper fishing expedition plaintiffs' unchecked discovery scope has become" if the case is ever to progress beyond the liability discovery phase.  *Id.* at ¶ 5.

In response, plaintiffs' counsel contends that the court's previous denial of access to the information in the Slone-Melhuish file was a direct consequence of defendant's inadequate privilege log (which identified the contents of the file only as "[p]hotographs taken by Slone-Melhuish Insurance in anticipation of litigation," Item 65, Exh. B, ¶ B(3)(a), and "documents [which] all post-date suit commencement and are material prepared in response to plaintiff's suit," *id.* at ¶ B(3)(c)), and that the above description in counsel's affidavit in support of the instant motion to quash is the first time in this litigation that the contents of the insurance agent's file has been identified with any specificity.  According to plaintiffs, this description reveals that the notes, communications, correspondence, and other materials in the file were prepared by the agent for the carrier prior to the coverage decision in the ordinary course of conducting insurance business, and the failure to identify this information in the privilege log has resulted in a waiver of work product protection.

As recognized in the court's previous ruling denying plaintiff access to this same information, and as emphasized by the parties' repeated motion practice, application of the work product doctrine to information in an insurance company's investigative file can be "particularly troublesome," because investigation and evaluation of claims for coverage is regarded as routine insurance company business.  *See, e.g., AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 4067437, at *12 (S.D.N.Y. Aug. 28, 2008) (cited in *Fingerhut*, 2013 WL 5923269 at *2).  Indeed, "[c]ourts frequently presume that investigative reports prepared by or for an insurer prior to a coverage decision are prepared in the ordinary course of the insurer's

business and are not afforded work-product protection." *Congregation Bnei Luzer, Inc. v. Md. Cas. Co.*, 2004 WL 2609570, at *2 (S.D.N.Y. Nov.17, 2004), *quoted in OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006 WL 3771010, at *5 (S.D.N.Y. Dec.15, 2006).

However, there is also ample case law support for the proposition that information gathered by an insurance agent during an investigation conducted immediately after an accident involving serious injury, "where it was immediately apparent that the negligence, if any, would likely be solely with the insurance company's insured …," should be entitled to work product protection. *Suggs v. Whitaker*, 152 F.R.D. 501, 506 (M.D.N.C. 1993) (citing *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (D.C.Pa. 1985) (information in insurer's investigative file, including inter-office memoranda containing mental impressions of insurer's personnel about merits of potential claim, was gathered "with [the insured]'s potential liability in mind" in anticipation of litigation). "In this latter situation, the prospect of litigation is immediate and the purpose of the insurance investigation will likely be so focused." *Suggs*, 152 F.R.D. at 506-07; *see also Arkwright Mutual Ins. Co. v. National Union Fire Ins.*, 1994 WL 510043, at *5 (S.D.N.Y. Sept.16, 1994) (work product protection may attach to report of insurance investigation where the probability of litigation is "substantial" and commencement of litigation "imminent").

In this case, based on the matters set forth in the submissions before the court, there can be no dispute about the seriousness of the injury suffered by plaintiff, the immediacy of the prospect of litigation, or the likelihood that any claim of negligent maintenance of the tree would be focused on Chautauqua Institution as the owner of the premises. In light of these circumstances, the information gathered by the insurance agent

during the investigation conducted soon after the occurrence might reasonably be considered as within the zone of protection offered by the work product doctrine for materials prepared in anticipation of litigation.  Indeed, following the court's October 31, 2013 ruling (and notwithstanding counsel's interpretation of its scope), the parties should have been on notice of the disputed nature of the information in the insurance file, and plaintiffs' effort to obtain that information directly from defendant's insurance agent through use of the subpoena power must be regarded as improper.

It is true that a party may waive the right to work-product protection by failing to provide an adequate description of the materials withheld as required by Fed. R. Civ. P. 26(b)(5)(A).[1]  *See, e.g., Weber v. Paduano*, 2003 WL 161340, at *12 (S.D.N.Y. Jan. 22, 2003); *see also A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2000 WL 1538003, at *3 (S.D.N.Y. Oct. 17, 2000) ("Where a party has completely failed to provide an index of documents withheld on the ground of privilege, a finding of waiver is appropriate.").  Of relevance to the waiver determination "is the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties."

---

[1] Rule 26(b)(5)(A) provides:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

*AFP Imaging Corp. v. Philips Medizin Systems*, 1993 WL 541194, at *3 (S.D.N.Y. Dec. 28, 1993).

Here, as discussed above, defendant's response to plaintiffs' document demands stated that "[d]efendant's insurer … has documents [which] all post-date suit commencement and are material prepared in response to plaintiff's suit." Item 65-1, p. 10, ¶ B(3)).  In the court's view, this description—while far from a model of compliance—does not reflect a sufficient level of "willful" or "cavalier" disregard for the requirements of Rule 26(b)(5)(A) to warrant a finding that defendant has waived work product protection from disclosure of the information in the insurer's investigative file.

Accordingly, accepting as true defense counsel's sworn statement affirming that the only photographs taken of the tree after the accident at issue are the ten that have already been produced, and that the remaining undisclosed information in the insurance file regarding the incident consists only of confidential communications between the agent and the carrier, made in connection with the investigation conducted soon after the occurrence under circumstances indicating serious injury and imminent likelihood of claim or suit, the court finds that the information sought by the subpoena qualifies as material prepared in anticipation of litigation, and is protected from disclosure by the work product doctrine.[2]

The court therefore grants defendant's motion for a protective order quashing the subpoena issued to Slone-Melhuish on January 16, 2014, and denies plaintiff's cross-

---

[2]Defense counsel suggests that the applicability of work product protection to the information in the insurance file can be readily demonstrated by *in camera* review, with counsel present to explain the privileged nature of the materials.  However, in the interests of avoiding further delay and conserving limited public and private resources, the court declines to adopt this approach and instead defers to the accuracy of the description in counsel's sworn affidavit.

motion to the extent it seeks to compel other photographs taken of the tree after the accident at issue.

3.    **Defendant's Motion for Protective Order**
       **Plaintiff's Cross-Motion to Compel/Allow Additional Depositions**

Defendant also seeks a protective order limiting further depositions and, if depositions are allowed, limiting the scope of questioning to matters relevant to the issues in the lawsuit—namely, whether defendant received actual or constructive notice of any exterior signs of decay or rotting of the tree before it fell.  As set forth in defense counsel's supporting affidavit, defendants have produced the following six witnesses for depositions, to date: Al Akin, Chautauqua Institution's Chief of Police; Douglas Conroe, Director of Operations; Sebastian Baggiano, Treasurer and Vice President/Finance; Ryan Kilbin, a seasonal laborer in defendant's Gardens & Landscaping Department at the time of the accident; Adam Akin, an EMT and bellboy at the Atheneum Hotel; and Heather Johnson, a former Gardens Department employee.  Plaintiffs have also deposed former defendant Bruce Robinson,[3] and two witnesses from defendant Chautauqua Bird, Tree & Garden Club.

Plaintiff has responded by cross-motion seeking to compel the depositions of defendant's employee who cut the tree up for disposal (Mr. Majewski), and the photographer who took the pictures of the fallen tree for the insurance company.  Plaintiffs also seek leave pursuant to Fed. R. Civ. P. 30(a)(2)(i) to depose eight additional fact

---

[3]Mr. Robinson, a Forestry Consultant who performed tree surveys at Chautauqua Institution in 1989 and 1997, was named as a defendant in 08-CV-588 (consolidated with this action by order entered December 16, 2008 (Item 7-2)).  The record reflects that the action has been voluntarily discontinued as against Mr. Robinson (see 6/2/2009 Minute Entry, Item 14).

witnesses, seven of whom (including Mr. Majewski) were disclosed as individuals likely to have discoverable information by virtue of defendant's "Rule 26(a)(1) Initial Disclosure" dated December 3, 2008— over five years ago.  *See* Item 86-8.

The court's October 31, 2013 order clearly reflects the understanding, reached by the parties and the court following prolonged engagement in a series of telephone conferences directed at establishing a *final* schedule for completion of *all* discovery, that the disclosure of the identified photographs of the subject tree and the depositions of subpoenaed non-party witnesses Johnson and Robinson would mark the completion of fact discovery in the action.  In addition, as defendant points out, it is not disputed at this stage of these protracted proceedings that the ultimate focus of the jury's determination of liability in this case will be proof *vel non* of the defendant's knowledge (or constructive knowledge) of the condition of the tree before it fell, and there is nothing in plaintiffs' submissions to suggest that either the person who took the pictures of the fallen tree or the person who cut the tree into disposable pieces after it fell could provide any relevant testimony as to that crucial issue.

Likewise, there is no information in the present record to indicate that any of the additional witnesses sought to be deposed might possess knowledge of facts regarding the condition of the tree before it fell.  Indeed, common sense suggests that it would be highly unlikely a lifeguard on duty at a nearby beach, or an EMT responding to the accident, could shed any testimonial light on Chautauqua Institution's constructive knowledge of the deteriorating condition of the tree.

In any event, the court is unable to overlook plaintiffs' failure to notice the depositions of these witnesses until now, at a point well beyond the anticipated deadline

for fact discovery, and more than five years after their identities were made known to plaintiffs' counsel.  As the minute entries on the court's docket clearly reflect, scheduling of liability witness depositions (a matter ordinarily left largely to counsel's discretion and calendar management within the parameters of the court's case management orders) has been directly and repeatedly addressed by this court as a chief concern during several pretrial conferences throughout the interminably long course of fact discovery in this case, yet plaintiffs' counsel waited until well after the schedule had expired to include these witnesses in their discovery plans.

While recognizing the well-established liberal policy of the federal discovery rules to provide a mechanism for "the parties to obtain the fullest possible knowledge of the issues and facts before trial …," *Hickman v. Taylor*, 329 U.S. 495, 501 (1947), the court remains mindful that, under Rule 26:

> On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).  To a degree, each of these circumstances is present in this case; in particular, and as highlighted by the discussion above, plaintiffs

have certainly had ample opportunity to depose the individuals identified by defendant in December 2008 as persons likely to have discoverable information regarding the accident—including Mr. Majewski, the lifeguards on duty at Heinz Beach, and the first responder EMTs.  Furthermore, plaintiffs have made no showing to suggest that the Slone-Melhuish photographer's testimony would be likely to provide any relevant information regarding defendant's constructive knowledge of the deteriorating condition the tree, beyond what is depicted in the photographs.

Accordingly, and for the reasons stated, the court grants defendant's motion for a protective order prohibiting plaintiffs from taking any further depositions of fact witnesses in this case.  In light of this ruling, the motion for protective order is denied as moot to the extent it seeks to limit the scope of questioning at any such further depositions.

For the same reasons, the court denies plaintiffs' cross-motion to compel the depositions of Mr. Majewski and the unidentified photographer, and denies plaintiffs' motion for leave to depose additional fact witnesses.  With respect to plaintiffs' cross-motion to compel production of witness statements, this motion is denied for the reasons previously stated in the court's October 31, 2013 order denying plaintiffs' previous motion to compel " 'other factual information obtained by defendant and its insurer' as the result of 'other unspecified investigation in the aftermath of the accident …,' " *Fingerhut*, 2013 WL 5923269, at *4—namely, defense counsel's repeated affirmation that no such information exists.

4.      **Sanctions**

Plaintiffs' counsel also seeks sanctions based on attorney conduct during depositions.    Under Rule 30(d)(2), "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deposition."  Fed. R. Civ. P. 30(d)(2).

The court must emphasize that it does not take claims of sanctionable conduct lightly.  However, based on the examples cited by plaintiffs, and in the interest of moving the litigation forward without engaging in a detailed ruling at this juncture on the legitimacy of the tactics employed by counsel on either side of the deposition table, the court denies the motion for sanctions without prejudice to renew and/or cross-move on a more complete record following completion of all fact and expert discovery in the case.

5.      **Final Amended Discovery Schedule**

Finally, considering the rulings made herein, and considering the parties' inability to reach agreement on a joint proposed scheduling order, the court adopts the framework suggested by defense counsel's proposal for a final amended discovery schedule (with adjustments to reflect delays due to the instant motion practice):

Medical Authorizations:  Plaintiffs shall respond to any outstanding requests for disclosure of healthcare providers and medical authorizations, within thirty days from the date of entry of this order.

Depositions of Fact Witnesses: completed (if previously undisclosed records reflect any material change in plaintiff's medical condition since her January 2011 deposition, defendants may conduct a further deposition of plaintiff limited only to damages issues).

Independent Medical Exam ("IME"):  completed by June 1, 2014 (subject to timely provision of outstanding medical authorizations and transmission of records).

FCE/Vocational Rehabilitation Exam: (if sought by defendant) completed by June 1, 2014.

Plaintiffs' Experts' Reports:  March 31, 2014 for service of further damages experts' reports, if any.  April 30, 2014 for service of liability expert report(s).

Defendants' Expert Reports:  June 30, 2014 for liability expert reports.  July 1, 2014 for reports of damages experts (IME, FCE, Vocational, if any).

Depositions of Experts:  By July 31, 2014, complete depositions of plaintiffs' experts.  By August 29, 2014, complete depositions of defendants' experts.

Motions: Plaintiffs shall respond to defendant Chautauqua Bird, Tree, and Garden Club's motion for summary judgment on or before May 19, 2014. Defendant(s)' reply, if any, shall be filed by June 2, 2014.

Any further dispositive motions by defendant(s) shall be filed no later than October 3, 2014.  The court will schedule response/cross-motion and reply dates upon receipt of notice that further dispositive motions have been filed.

Scheduling of any motions *in limine* and/or other non-dispositive motions, and trial date, is deferred pending the completion of discovery and the outcome of dispositive motions.

## **CONCLUSION**

Based on the foregoing, the following is ordered:

1.  Defendant Chautauqua Institution's motion (Item 78) for a protective order pursuant to Fed. R. Civ. P. 26(c), quashing plaintiffs' January 16, 2014 subpoena to Slone-Melhuish Insurance, is GRANTED.

2.  Defendant Chautauqua Institution's motion (Item 80) for a protective order pursuant to Fed. R. Civ. P. 26(c) is GRANTED to the extent it seeks to limit

the taking of further deposition of fact witnesses, and DENIED in all other respects.

3.      Plaintiffs' motion (Item 86; repeated, Item 88) is DENIED in its entirety.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   April 16, 2014
p:\pending\2007\07-502.apr14.2014