UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORI FINGERHUT, an infant,
by Emily Fingerhut, her mother,
EMILY FINGERHUT, individually,

       Plaintiffs,

   v.

Chautauqua Institute Corporation,

       Defendant.

07-CV-502
DECISION AND ORDER

---

      Plaintiffs Lori and Emily Fingerhut seek to recover for personal injuries sustained on July 26, 2005, when a tree at the Chautauqua Institute fell onto Lori Fingerhut during a sudden storm. The Fingerhuts initially commenced this action against the Chautauqua Institute Corporation ("the Institute") as owner of the premises, as well as several other parties. The Institute is now the sole remaining defendant. Docket Item 92. Currently pending before the Court is the Institute's motion to strike the Fingerhuts' supplemental response to interrogatories. Docket Item 157.[1]

      For the reasons that follow, this Court grants the Institute's motion to strike.

---

[1] The Fingerhuts also have moved for a briefing schedule or, in the alternative, for an extension of time to respond to the defendant's motion to strike. Because the plaintiffs now have responded and the Court has considered that response, the Court dismisses the plaintiffs' motion as moot.

## **BACKGROUND**

The Fingerhuts filed this case in 2007. Docket Item 1. In the complaint, they alleged that the Institute was negligent in maintaining its property and caring for the tree that fell on Lori Fingerhut.[2] *Id.* ¶ 1. The Fingerhuts pursued that theory for the next decade. *See generally* Docket 07-CV-502.

On March 30, 2017, this Court ordered that all discovery be completed by August 31, 2017, and that dispositive motions be submitted by October 2, 2017. Docket Item 134. On October 2, 2017, the Institute moved for summary judgment.[3] Docket Item 143. The Fingerhuts responded to the summary judgment motion on October 31, 2017, Docket Item 145, and at the same time served a "Supplemental Response to Defendant's Interrogatories" ("the supplemental response"), *see* Docket Item 157-2.

---

[2] Specifically the Fingerhuts alleged:

> That the negligence of the defendant consisted of careless and negligent maintenance of property, careless and negligent maintenance of the tree which struck plaintiff, planting an improper tree for the area, failure to properly recognize the deteriorated nature of the tree which struck plaintiff, failure to remove said tree prior to the occurrence of the complained of incident, failure to remedy the deteriorated nature of the tree prior to the incident, failure to utilize procedures which would have aided in the detection of the deteriorated nature of the tree, failure to monitor its property for dangerous conditions, failure to warn of the danger relative to the subject tree, failure to adhere to appropriate standards and practices relative to tree maintenance, carelessly and negligently allowing said deteriorated tree to exist in a high profile and heavily frequented area, and was otherwise careless, reckless, and negligent.

Docket Item 1 ¶ 12.

[3] The Institute's motion for summary judgment is resolved in a separate decision issued concurrently with this order.

Because the Institute received the supplemental response on October 31, 2017—two months after this Court's deadline—the Institute rejected the response as untimely. Docket Items 134, 157-3. A month later, the Institute moved to strike the submission. Docket Item 157. The Fingerhuts first moved to extend the deadline to respond to the motion to strike, Docket Item 161, but then responded on January 5, 2018, Docket Item 162. The Institute replied on January 12, 2018. Docket Item 164.

The supplemental response alleges that the Institute was "negligent in failing to give warning to persons on Heinz Beach, during the afternoon of July 26, 2005, of the approach of a severe storm, and failure to clear the beach prior to the arrival of such storm, despite the fact that its agents, servants, and/or employees, including, without limitation, its Director of Operations, Douglas Conroe, had actual knowledge of the approach of the storm." *See* Docket Item 162-4 at 3. According to the Fingerhuts, the basis for the supplemental response were Conroe's depositions taken on December 19, 2012, and February 4, 2013. Docket Item 145-2; *see also* Docket Items 145-3, 145-16.

## **DISCUSSION**

The Federal Rules of Civil Procedure require parties not only to respond to requests for disclosure but to supplement their responses as well. Fed. R. Civ. P. 26(e)(1)(A). Moreover, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a hearing, or at a trial unless the failure was substantially justified or was harmless." Fed. R. Civ. P. 37(c)(1).

The Institute now moves to strike the supplemental response because that response was late and includes a new claim. Docket Item 157-1 ¶ 12. In opposition, the Fingerhuts argue that they have not asserted a new claim; alternatively, they argue that they alleged the claim prior to their opposition to summary judgment and that supplementation should be allowed because there is no prejudice to the Institute. Docket Item 162 ¶¶ 3, 16.

I. **The Fingerhuts assert a new claim.**

The complaint alleged that the Institute was negligent because it failed to "warn of the danger *relative to the subject tree*," *see* Docket Item 1 ¶ 12 (emphasis added), and the Fingerhuts' initial responses to interrogatories in 2009 focused solely on the care and maintenance of that tree.[4] *See* Docket Item 143-6. Indeed, until the plaintiffs responded to the defendant's motion for summary judgment—ten years after the case was commenced and twelve years after the events at issue occurred—they claimed only that the tree was negligently maintained and that the Institute should have recognized that it was rotting from the inside and prone to fall. So the claim that an Institute employee knew about the approaching storm and failed to warn or move those on the Institute's property is brand new.

In support of their argument that the supplemental response does not assert a new claim, the Fingerhuts cite *Kloner v. United States*, 2016 WL 5921071 (E.D.N.Y. Oct. 11, 2016). In *Kloner*, the plaintiff was injured when he fell from a staircase during a

---

[4] The interrogatories asked the plaintiffs to "[s]et forth all acts and omissions allegedly constituting carelessness and/or negligence on the part of each and every one of the defendants, their agents, servants and/or employees," and "state how each and every defendant is alleged to have caused plaintiff's injury." Docket Item 157-4.

U.S. Coast Guard retirement ceremony, and he sued the United States alleging negligence in violation of the Federal Tort Claims Act. 2016 WL 5921071, at *1. In his opposition to the defendant's motion for summary judgment, the plaintiff alleged that the defendant assumed a duty of care. *Id.* at *3. Although this was the first time the plaintiff raised the issue of an assumed duty of care, the court denied summary judgment on that claim. *Id.* at *4. The Court noted that the assumption-of-duty theory had been presented as an alternative argument in support of a previously-raised claim of negligence. *Id.* at *5. In fact, the plaintiff had explicitly raised the defendant's "duty to identify potential risks and hazards to personnel participating in the Ceremony and to exercise due care to . . . control such risks and hazards by applying appropriate management policies and procedures." *Id.*

Here, the Fingerhuts point to no such prior arguments addressing their new theory. Indeed, unlike *Kloner*, the Fingerhuts' earlier allegations do not support the inference of negligence raised by the new proposed theory. *See Lyman v. CSX Transp., Inc.*, 364 Fed. App'x 699, 701-02 (2d Cir. 2010) (summary order) ("We have reviewed plaintiff's complaint and interrogatory response, and we conclude that they were insufficient to put defendant on notice of plaintiff's new negligence claims."); *see generally Thomas v. Egan*, 1 Fed. App'x 52, 54 (2d Cir. 2001) (summary order) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim."). There is no doubt that the claim asserted in the supplemental response is a new one.

## II. The new claim was raised for the first time in response to the institute's summary judgment motion.

After this case was reassigned to the undersigned on April 22, 2016, the discovery cut off was set for August 31, 2017. Docket Items 134, 139. The Institute moved for summary judgment on October 2, 2017, the last day for dispositive motions, *see* Docket Item 143, and the Fingerhuts submitted their papers in opposition on October 31, 2017. Those papers included the supplemental response asserting the duty-to-warn claim, raised for the first time in this action. Docket Items 145. Indeed, relying on the supplemental response, the Fingerhuts argued in their memorandum of law that "Defendant, Chautauqua Institute, May Be Held Liable For Failure Tow [sic] Warn Of The Impending Storm And/Or Clear Heinz Beach Prior To The Arrival Of The Storm." Docket Item 145-2 at 27.

For that reason, this Court refused to consider the new claim at oral argument of the summary judgment motion, a refusal that was well within this Court's discretion. *See Lyman,* 364 Fed. App'x at 702 ("we cannot conclude that the district court abused its discretion in failing to consider plaintiff's new theories of liability"); *see also Thomas*, 1 Fed. App'x at 54 ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim . . . . Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion.") (citations omitted); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."); *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ("[C]ourts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment.").

6

### III. The new claim is both untimely and prejudicial.

The Fingerhuts argue, rather obliquely, that they were required by Rule 26(e)(1)(A) to supplement their disclosure because their earlier response was incomplete or incorrect. Docket Item 162 ¶ 16. But the rule requiring parties to supplement their disclosure responses does not give parties carte blanche to supplement whenever they wish. There are limits, and the Fingerhuts exceeded those limits here.

The purpose of Rule 26(e) is to prevent the "sandbagging" of a party with new evidence. *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (citing *Ebewo v. Martinez*, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004)). To determine whether to preclude evidence under Rule 37, courts examine: (1) the party's explanation for the failure to comply with discovery deadlines; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and (4) the possibility of a continuance. *Id.* (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

As to the first *Patterson* factor, the Fingerhuts contend that when they originally responded to the Institute's interrogatories, on July 16, 2009, they were unaware that Conroe had advance warning of the storm. According to the Fingerhuts, they did not have that information until Conroe's deposition on December 19, 2012. Docket Item 162 ¶ 17. But the Fingerhuts do not explain why the response was not supplemented until they responded to the summary judgment motion in late 2017—five years later. So their explanation for the delay is less than sufficient.

Because the supplemental response serves only to raise a new stand-alone claim, striking it would not preclude any evidence about the claim that the parties

7

litigated for close to ten years, let alone affect the importance of the evidence. Indeed, were this Court to permit the Fingerhuts to pursue their new theory, that would only begin a new chapter in an already too-old case. And given the ten years that have passed since this action commenced, faded memories and discarded records might well prejudice the Institute's ability to defend the decade-old claim.

The Fingerhuts argue that this new claim will not prejudice the Institute because it has been aware of Conroe's deposition testimony since 2012. But the cases upon which the Fingerhuts rely to support their belated attempt to supplement involve circumstances markedly different from those here.

In *Arista Records LLC v. Lime Grp. LLC*, 715 F. Supp. 2d 481, 495 (S.D.N.Y. 2010), *opinion withdrawn and superseded*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011), for example, the defendants moved to strike the declarations of three individuals who had not been identified as potential witnesses. In denying the defendants' motion, the court found that "[t]he information provided by [one new witness] is no different from that possessed by a witness whose identity was timely disclosed . . . ." *Id.* at 501. With respect to the other two witnesses, the court found that the defendants could have moved to cross-examine them when the declarations were submitted, "which would have remedied any prejudice Defendants claim to have suffered." *Id.*; *see also Schindler Elevator Corp. v. Otis Elevator Co.*, 586 F. Supp. 2d 231, 239 (S.D.N.Y. 2008), *vacated and remanded*, 593 F.3d 1275 (Fed. Cir. 2010) (finding a new expert opinion provided "substantial support" for the opposing party's position). Thus, the court denied the motion to strike because the defendants suffered no prejudice.

Here, in contrast, the information raises an entirely new claim based on a completely different set of facts—not simply new information from a newly-disclosed witness. The Institute therefore could not meaningfully "investigate, challenge [or] depose witnesses" with regard to the new claim except by commencing discovery anew. *See Yeger v. Inst. of Culinary Educ.*, Inc., 2017 WL 377936, at *9 (S.D.N.Y. Jan. 25, 2017) (granting motion to strike and noting that discovery closed several months prior and the parties completed their summary judgment briefing). And after a ten-year time lapse and the expenditure of so much time and money, that is simply too much to ask of the defendant. *See, e.g.*, *id.*; *Pal v. New York Univ.*, 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008) (delay in disclosure was not harmless where discovery would have to be reopened, resulting in additional litigation expenses); *Briese Lichttechnik Vertriebs GmbH v. Langton*, 2011 WL 280815, at *11 (S.D.N.Y. Jan. 10, 2011) (precluding defendants from "utilizing, either on summary judgment or at trial, any documents not produced to plaintiffs during the specified discovery period").

This case has languished on the Court's docket for more than a decade. The Fingerhuts do not explain why this new claim was not raised at any time prior to dispositive motions being filed, and they do not even suggest how any potential prejudice to the Institute might be corrected before trial. Under these circumstances, it would simply be unfair to allow them to assert this claim in such an untimely manner.

In light of the unique history of this case, and because the *Patterson* factors strongly support preclusion of the supplemental response, the Fingerhuts may not raise or offer proof at trial of the new claim—specifically, a claim of negligence premised upon

9

the failure to warn about, or take measures to protect against, the incoming storm on July 26, 2005.

## **CONCLUSION**

For a decade, this case has proceeded on one theory of liability. In response to the defendant's summary judgment motion and with the Court contemplating a 2018 trial date, the plaintiffs want to add another. What is more, the new theory is one that the plaintiffs have known about for five years.

The plaintiffs ask too much. Under the circumstances here—the age of the case, the way in which the new issue was raised, the prejudice to the defendant, and the delay in raising the new issue—it would be manifestly unfair to do anything other than preclude the new claim. Therefore this Court GRANTS the defendant's motion to strike the supplemental response, Docket Item 157, and DISMISSES as moot the plaintiffs' motion for an extension of time to respond, Docket Item 161.

SO ORDERED.

Dated: May 3, 2018
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE