UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORI FINGERHUT, an infant,
by Emily Fingerhut, her mother,
EMILY FINGERHUT, individually,

       Plaintiffs,                            07-CV-502
                                                              DECISION AND ORDER
    v.

Chautauqua Institute Corporation,

       Defendant.

---

Plaintiffs Lori and Emily Fingerhut seek to recover for personal injuries sustained on July 26, 2005, when a tree near Heinz Beach, located on the property of the Chautauqua Institute, fell on Lori during a storm. The plaintiffs initially commenced this action against the Chautauqua Institute Corporation (the "Institute"), as owner of the premises, as well as several other parties. At this stage of the proceedings, the Institute is the sole remaining defendant, Docket Item 1 at 5-38, and it has moved for summary judgment. Docket Item 143.[1]

For the reasons that follow, the Court denies that motion.

---

[1] In support of its motion, the defendant has submitted an attorney declaration, a statement of undisputed facts, a memorandum of law ("Def. Mem."), and an appendix with supporting Exhibits A through J ("Def. Ex."). Docket Item 143-1 through 143-14. The plaintiffs' response consists of an attorney declaration, an "appendix objections to statement of undisputed facts," a memorandum of law ("Pl. Mem."), and supporting Exhibits A through V ("Pl. Ex."). Docket Item 145 through 145-28.

# BACKGROUND[2]

On July 26, 2005, a severe thunderstorm swept across New York's Southern Tier, including the Chautauqua Institute. Pl. Ex. I. Lori Fingerhut, then age fourteen, was on the grounds of the Institute when she was struck by a falling tree. Def. Ex. C at 2. She sustained severe trauma, including multiple orthopedic, neurological, and psychological injuries, which resulted in a twelve-week hospitalization and multiple surgeries. Docket Item 122-3 at 3-16; Def. Ex. C at 4-5.

The Institute is a non-profit corporation that operates a 750-acre community on Chautauqua Lake. As part of its programming, the Institute hosts lectures, faith and religious programs, youth activities, and outdoor recreation such as golf, tennis, and boating. *See* www.chq.org (last accessed April 20, 2018).

To maintain its grounds, the Institute uses an Operations Department. Pl. Ex. A at 13. Douglas Conroe has been employed at the Institute since 1984 and has been its Director of Operations since 1994. Def. Ex. E at 6, 11. The Operations Department has a tree-care budget for removal, trimming, and planting of trees. Def. Ex. F at 34, 37. Property owners at the Institute regularly call the Operations Department with concerns regarding trees both on their own property and in common areas. Def. Ex. E at 26, 61; Def. Ex. F at 15. The Institute retains independent contractor arborists to assess, trim, and remove the trees on its grounds. Def. Ex. E at 25.

---

[2] The following facts are undisputed except where noted. For purposes of the defendant's motion for summary judgment, they are viewed in the light most favorable to the plaintiffs. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

One such arborist was J.A. Curtiss,[3] who began servicing trees in 1971. Def. Ex. H at 11, 16-17, 24-25. Mr. Curtiss and his family business serviced the trees at the Institute through the date of the accident.[4] Def. Ex. H at 55. The Institute provided Mr. Curtiss with lists of trees about which residents had reported a problem, and Mr. Curtiss inspected them to determine whether they were healthy or damaged. Def. Ex. F at 16, 17; Def. Ex. H at 56-57, 60. Mr. Curtiss would advise the Institute about which trees required further attention. Def. Ex. H at 140-41. In addition, if Mr. Curtiss observed trees that were not on the list but that required attention, he would advise the Institute about what needed to be done. Def. Ex. H at 60, 61, 142. Mr. Curtiss believed that based upon his experience, he could look at a tree and tell whether it was healthy or in decline. Def. Ex. H at 80.

Mr. Curtiss provided the Institute with an annual recommended work schedule for tree maintenance. Def. Ex. F at 19, 117; Def. Ex. H at 149. In connection with that schedule, he compiled a list of maintenance recommendations for the grounds and sought approval for the recommended work. Def. Ex. E at 32; Def. Ex. H at 124,126. If

---

[3] According to the plaintiffs, Mr. Curtiss was not a qualified or certified arborist and did not assess trees for the Institute. Pl. Ex. F at 16, 35. Although the plaintiffs object to this characterization of Mr. Curtiss, whether he is a "certified" arborist does not affect the analysis because such certification is not required by law. Def. Ex. H at 16.

[4] The plaintiffs have objected to a number of facts included in the defendant's Rule 56 statement of undisputed facts. These objections do not correspond with the defendant's paragraphs, do not state to which facts they are objecting, or are not supported by a citation to admissible evidence. The plaintiffs are reminded to review this Court's Local Rules of Civil Procedure, which allow the Court to deem a purported fact admitted for purposes of a summary judgment motion unless it is a specifically controverted by a correspondingly numbered paragraph in the opposing statement. Loc. R. Civ. P. 56(a)(2).

a tree was a potential safety hazard, that tree was placed at the top of the list. Def. Ex. E at 32.

In the years leading up to the incident, every item on Mr. Curtiss's list of recommendations was approved by the Institute. Def. Ex. E at 31. Mr. Curtiss specifically performed work near Heinz Beach on South Lake Drive along the edge of the lake—the area where the tree fell on Lori Fingerhut. Def. Ex. H at 84-85. Mr. Curtiss believed that "[t]here was nothing to do" to the trees in that area. *Id.*

The Institute also contracted with Taylor Tree Service to evaluate and remove trees on the grounds. Def. Ex. E at 19, 25; Def. Ex. F at 52, 116; Def. Ex. H at 40. Both tree-service companies would alert the Institute to needed tree maintenance or concerns. Def. Ex. F at 116. According to Mr. Conroe, the Institute maintained "constant interaction with Curtiss or Taylor Tree Service as to what they see, what we are looking for, what we need to do. So [the Institute's] prevent[ion] would be ongoing discussions with people who have awareness." Def. Ex. F at 109.

## **PROCEDURAL HISTORY**

On August 1, 2007, the Fingerhuts commenced this action against the Institute, claiming that the negligent maintenance of Institute property resulted in the injuries to Lori Fingerhut. In response to the Institute's interrogatories, the Fingerhuts claimed that the Institute was negligent

> in the selection of the type of tree that caused this accident, in allowing said tree to remain adjacent to Heinz Beach, in locating said tree adjacent to Heinz Beach, in not removing said tree prior to the incident complained of herein, in failing to properly inspect the tree, in failing maintain the tree; in failing to properly repair damage to the tree, failing to properly recognize the deteriorated nature of the tree which struck plaintiff, failing to remedy the deteriorated nature of the tree prior to the incident, failing to utilize

4

procedures which would have aided in the detection of the deteriorated nature of the tree, failing to monitor its property for dangerous conditions, failing to warn of the danger relative to the subject tree, hiring improperly trained or qualified persons to inspect and/or maintain the tree, failing to adhere to appropriate standards and practices relative to tree maintenance, carelessly and negligently allowing said deteriorated tree to exist in a high profile and heavily frequented area.

Def. Ex. C.

The Institute now argues that it had no notice of a problem with the tree and therefore could not have done anything to prevent the accident. Docket Item 143-14. In this regard, the experts for both the plaintiffs and the defendant agree that a fungus known as Ustulina—also known as the "silent killer" of trees—had weakened the tree that fell. Def. Ex. I at 39-42, 166, 179; Def. Ex. J at 64-65, 88-89. But, not surprisingly, they agree on little else.

According to the defendant's expert, Dr. Daniel Marion, the internal cavity of the tree and internal rot became visible only when the tree fell and split open. Def. Ex. I at 42; Def. Ex. D. But Brian Sayers, the plaintiffs' expert, concluded that there must have been a visible cavity in the tree—a cavity that was not visible in the post-accident photographs only because the location of the cavity is where the tree split. Pl. Ex. K at 83-86.

More specifically, Dr. Marion opined that a tree, such as the tree at issue here, could rot and decay on the inside but look perfectly normal on the outside. Def. Ex. I at 167. Mr. Sayers, on the other hand, said that the internal rot of a tree was exhibited by a visible condition called "butt-swelling," which appears as a bulge in the tree's trunk. Def. Ex. J at 107-08; Pl. Ex. K at 77-81, 117. According to Mr. Sayers, butt-swelling is strong evidence of decay, Pl. Ex. H ¶ 6, and would have been noticeable even to the

5

untrained eye: "[h]omeowners often notice something funny about my tree, you know, there's a bulge in my tree. . . ." Pl. Ex. K at 117.

The experts also disagreed on what the tree's canopy said about its health. Dr. Marion noted that post-accident photographs of the fallen tree showed "copious amounts of foliage" on its branches but that there were areas with no leaves. Def. Ex. I at 78; Def. Ex. D. Mr. Sayers estimated that the leaf canopy on the tree was 80-85 percent full, Def. Ex. J at 83, but said that "80 to 85 percent full may sound like a lot but it is not and it is indicative of a tree that is under stress and declining . . . . [T]he tree canopy was thinning and while some areas had leaves on them, there were many other areas that had bare branches and bare limbs . . . ." Pl. Ex. H ¶ 8. He also said that a thinning canopy can be a sign of Ustulina fungus. Pl. Ex. K at 89-91.

Mr. Sayers noted that white structures, or stromata, were visible on the tree in the post-accident photographs. Def. Ex. J at 64-74. He opined that the stromata were other visible evidence that the tree needed attention. The size of the stromata are less than a fist—approximately two inches by two inches—and they are observable only for a two-week period in spring or early summer. Def. Ex. I at 163; Def. Ex. J at 72, 74. But Mr. Sayers swore that "the existence of the stromata is clear and unrefuted evidence that an active fungus decay process is occurring inside the tree." Pl. Ex. H, ¶ 12. And he said that the presence of stromata can be a visible sign of the presence of the pathogen Ustulina. Pl. Ex. K at 75-76.

Dr. Marion opined that the Ustulina entered the tree through its root system. Def. Ex. I at 149, 152, 153. Mr. Sayers did not dispute that Ustulina can enter a tree through the roots, but he said that he had never seen it spread through the roots of a red maple,

6

the type of tree at issue here. He opined that Ustulina did not enter the tree through its roots. Def. Ex. J at 88; Pl. Ex. K at 89; Pl. Ex. H ¶¶ 10-11.

Those responsible for the Institute's tree maintenance agreed with the Institute's expert. For example, after he viewed post-accident photographs of the tree, Mr. Curtiss said that he did not observe any bark that appeared unhealthy. Def. Ex. H at 102; Def. Ex. D. And when asked to view a photograph taken "at the base of the tree," Mr. Curtiss could not tell whether there was "a hollow on the tree" that would allow one to "observe the inside of the trunk." Def. Ex. H at 106.

Similarly, Bruce Robinson, a forester who has done work at the Institute, Def. Ex. G at 15, looked at the post-accident photographs of the tree and saw no exterior signs of decay. *Id.* at 104-06. Mr. Robinson noted that "none of what the pictures show would have been obvious . . . to an observer from looking at the trunk of the tree." *Id.* at 121. According to Mr. Robinson, a tree cavity is not necessarily a fatal condition. *Id.* at 103. And with respect to the tree at issue, Mr. Robinson found "some" interior deterioration but he concluded that the deterioration was not obvious from the post-accident photographs. Pl. Ex. C at 104-06.

In sum, the plaintiffs' expert disagreed with the defendant's expert and with those who performed tree services for the defendant about whether there were visible problems that required attention. Based on their respective experts, the plaintiffs argue that the Institute had adequate notice of a problem and should have done something, while the Institute argues that it had no notice and therefore no reason to do anything.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

### II. THE INSTITUTE'S MOTION

#### A. There is a question of fact about whether the Institute had constructive notice of any defect or dangerous condition.

The Institute seeks summary judgment based on its assertions that it properly inspected and maintained the trees on its property and had no notice of the deterioration of the fallen tree. Def. Mem. at 3-12. The Fingerhuts respond that the Institute did have constructive notice of the defects in the fallen tree; that the Institute should be held to a higher duty of care; and that questions of fact preclude summary judgment. The plaintiffs also seek to assert a new claim that the defendant failed to

8

warn about the incoming storm[5] and seek an adverse inference against the defendant based upon alleged spoliation of evidence. Pl. Mem. at 11-27.

So the central issue presented by this motion is whether the Institute had actual or constructive notice of any defect or dangerous condition in the tree.

To prevail on a negligence claim under New York law, a plaintiff must establish "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) that such breach was a substantial cause of the resulting injury.'" *In re Lake George Tort Claims*, 461 Fed. App'x 39, 40 (2d Cir. 2012) (summary order) (citing *Merino v. N.Y.C. Transit Auth.*, 218 A.D.2d 451, 457 (1st Dep't) 1996)). "Under New York law, a landowner, who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition." *Taylor v. U.S.*, 121 F.3d 86, 89-90 (2d Cir. 1997).

As the moving party, the defendant bears the burden to make a prima facie showing that it neither created nor had actual or constructive knowledge of a dangerous condition. *Samuels v. Marriott Int'l, Inc.,* 86 Fed. App'x 453, 455 (2d Cir. 2004). If the defendant meets that burden, the burden then shifts to the plaintiff to present evidence on each element of the claim and to demonstrate that there is still a genuine issue of material fact. *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).

"It is well established that '[a] landowner must act as a reasonable [person] in maintaining his [or her] property in a reasonably safe condition in view of all the

---

[5] This issue is addressed in a separate decision issued today in connection with the defendant's motion to strike. Docket Item 157.

circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.'" *Ferguson v. Rochester City Sch. Dist.*, 99 A.D.3d 1184, 1185 (4th Dep't 2012) (quoting *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976)). "In cases involving fallen trees, a property owner will only be held liable if he knew or should have known of the defective condition of the tree." *Priore v. N.Y.C. Dep't of Parks & Recreation*, 124 A.D.3d 749, 749 (2d Dep't 2015) (citing *Ivancic v. Olmstead*, 66 N.Y.2d 349, 351 (1985); *see also Harris v. Vill. of E. Hills*, 41 N.Y.2d 446, 450 (1977). "Constructive notice in such a case can be imputed if the record establishes that a reasonable inspection would have revealed the dangerous condition of the tree." *Priore,* 124 A.D.3d at 749-50 (citation and quotation marks omitted). "[T]he concept of constructive notice with respect to liability for falling trees is that there is no duty to consistently and constantly check all trees for nonvisible decay. Rather, the manifestation of said decay must be readily observable in order to require a landowner to take reasonable steps to prevent harm." *Ivancic*, 66 N.Y.2d at 351.

The parties do not dispute that there were no prior complaints about the fallen tree, and so the Institute did not have actual notice of the defective condition. Def. Mem. at 8; Def. Ex. J at 114; Pl. Mem. at 15-16; *see generally Nussbaum v. Metro-N. Commuter R.R.*, 603 Fed. App'x 10, 12 (2d Cir. 2015) (summary order) ("Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition.") (citation omitted). Constructive notice, however, is a closer question.

The defendant's expert and maintenance personnel have sworn that the tree appeared healthy, that it did not need maintenance, and that there were no signs of any

10

rot within the tree. They claim that the tree was decayed only inside and that such a tree can appear healthy outside. Def. Ex. H at 85, 102; Def. Ex. G at 104-06; Def. Ex. I at 42, 167. Conversely, the plaintiffs' expert has sworn that the post-accident photographs show evidence of external decay—including a "lump" known as "butt-swelling"; white, gill-like structures known as stromata of Ustulina fungus; and a thinning tree canopy. Pl. Ex. C at 104-06, 113; Pl. Ex. K at 65, 79-81, 117.

The stark dispute between the experts for both sides is sufficient to raise a factual dispute as to whether the Institute had constructive notice of the tree's deteriorating—and therefore dangerous—condition. *See Jurgens v. Whiteface Resort on Lake Placid L.P.*, 293 A.D.2d 924, 926 (3rd Dep't 2002) (in fallen tree case, expert forester's opinion indicating "observable, extensive decay" on tree raised issue of fact regarding the existence of a dangerous condition and defendants' constructive notice of that condition); *Crawford v. Forest Hills Gardens,* 34 A.D.3d 415, 416 (2nd Dep't 2006) (denying summary judgment where "plaintiffs offered the affidavit of their expert which raised a triable issue of fact as to whether the tree presented a "readily-observable manifestation of decay" that should have alerted defendant to the defective condition).

*Lesser v. Camp Wildwood*, 282 F. Supp. 2d 139 (S.D.N.Y. 2003), is particularly instructive here. In *Lesser*, a camper was injured when a tree branch fell on him. The defendants asserted there were no outward signs of interior rot. But the plaintiff's tree expert opined that the tree showed signs of "stress" because it was abnormally thin and discolored. The court explained that "[t]he issue is not whether the responsible party actually had an inspection program in place but, rather whether reasonable inspection—if it had taken place—would have revealed the defect." *Id.* at 149-50 (citation omitted).

11

The court found the plaintiff's expert proffer of observable defects was sufficient to raise a question of fact and denied the defendants' summary judgment motion. *Id.* at 151.

Here, as in *Lesser*, the defendant asserts that its inspection procedure is reasonable, but that does not resolve whether a reasonable inspection would have revealed the interior rot. Pl. Ex. A at 23, 108-09. Here, as in *Lesser*, the plaintiffs' expert observed visible evidence of interior rot: in *Lesser*, a thin trunk and discolored leaves; in this case, stromata, butt-swelling of the lower trunk, and a thinned canopy. So here, as in *Lesser*, the plaintiffs' expert proffer of observable defects precludes summary judgment. *See Lesser*, 282 F. Supp. 2d at 149-50, 151; *cf. Ivancic*, 66 N.Y.2d at 351 (finding, with regard to constructive notice, that "[n]ot one of the witnesses who had observed the tree prior to the fall of the limb testified as to observing so much as a withering or dead leaf, barren branch, discoloration, or any of the other indicia of disease which would alert an observer to the possibility that the tree or one of its branches was decayed or defective.").

Viewing the evidence in the light most favorable to the plaintiffs, a reasonable jury could conclude that the Institute had constructive notice of a dangerous condition either (1) because of the visible manifestations of rot or (2) because a reasonable inspection would have discovered the rot. For those reasons, the defendant's motion for summary judgment is denied. In light of this decision, the Court need not address the plaintiffs' additional argument that the defendant's motion should be denied because of the defendant's alleged spoliation of evidence. Pl. Mem. at 13-15; *see Stepton-Howard v. Rite Aid Corp.*, No. 16CV1352, 2017 WL 3017191, at *5 n.4 (E.D.N.Y. June 13, 2017).

Finally, the Court agrees with the defendant that, for the summary judgment motion, "the only relevant inquiry here is whether [the Institute] had notice of the decayed nature of the subject tree." Def. Mem. at 12. The Court therefore does not reach the plaintiffs' argument that the Institute had a heightened legal duty because of the tree's proximity to a beach and a roadway. Pl. Mem. at 18.

## **CONCLUSION**

For the reasons discussed above, this Court DENIES defendant's motion for summary judgment, Docket Item 143.

SO ORDERED.

Dated: May 3, 2018
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE